EDWIN F. STERN, as Administrator of the Estate of FRANK ROSS, Respondent, *v.* METROPOLITAN STREET RAILWAY COMPANY, Defendant, and THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

STREET RAILROADS — DEFECT AT CROSSING — NEGLIGENCE. Plaintiff, while crossing a street, stepped upon a worn rail from which his foot slipped into a hole in the crosswalk alongside said rail, and while his foot was caught therein he fell and was injured. *Held,* that the testimony as to the wearing of the rail was not sufficient to impute negligence to the railroad company in the maintenance of its track, and that the condition of the rail was not the proximate cause of the injury.

*Ross* v. *Metropolitan Street Ry. Co.*, 116 App. Div. 507, reversed.

(Argued October 20, 1908; decided November 10, 1908.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 28, 1907, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict.

About midnight January 17, 1897, the plaintiff's intestate while crossing Tenth avenue in the city of New York on the south crosswalk at Little West Twelfth street stepped upon the top of an iron or steel rail, and his foot slipped therefrom into a hole in the pavement which was about two feet long and six to eight inches wide and six to seven inches deep, and his heel caught under the bottom of said rail, and while so caught he fell breaking his leg. The hole immediately adjoined said rail and was parallel to it.

Said intestate brought this action against the appellant and the Metropolitan Street Railway Company claiming that they were jointly and severally responsible for negligently laying and maintaining said rail and also for failure to maintain the street at the place where the hole existed in a reasonably safe condition.

The action was first tried in 1904 and resulted in a verdict of $5,000 in favor of said intestate against both defendants. A motion was made before the judge presiding at the trial to set aside the verdict and for a new trial upon all the grounds stated in section 999 of the Code of Civil Procedure. The motion was granted. It was ordered that the motion to set aside the verdict on the ground that the same was excessive in amount "Be and the same is hereby granted and the said verdict is hereby set aside, and it is further ordered that upon all other grounds the said motion is hereby denied."

An appeal was taken by said intestate to the Appellate Division of the Supreme Court where the order was affirmed. The action was again tried in 1905 and a verdict was rendered in favor of the plaintiff for $15,000. A motion was thereupon made before the judge who presided at that trial to set aside the verdict and for a new trial. The motion was denied upon condition that said intestate stipulate to accept $9,000 in place of said verdict of $15,000. Said intestate gave the

stipulation and judgment was entered against both defendants upon the verdict as so reduced. An appeal was taken from said judgment so entered and an order refusing to set aside the verdict and grant a new trial to said Appellate Division. The Appellate Division reversed the judgment as against the defendant the Metropolitan Street Railway Company and ordered a new trial as against such defendant. It directed that upon said intestate consenting to reduce the judgment as entered from $9,206.20 to $5,206.20 said judgment as reduced and the order appealed from be affirmed against the New York Central and Hudson River Railroad Company, without costs to either party, otherwise that said judgment and order be reversed and a new trial granted to said defendant.

The plaintiff having died and Edward F. Stern having been appointed administrator of his goods, chattels and credits, such administrator consented to the reduction of said judgment and a judgment of affirmance was entered accordingly. From such judgment the appeal is taken to this court. Further facts appear in the opinion.

*Robert A. Kutschbock* and *Charles C. Paulding* for appellant. The evidence fails to establish negligence of the defendant appellant, either as to the hole in the crosswalk or as to the construction and maintenance of the rail. (*Conway* v. *City of Rochester,* 157 N. Y. 33 ; *Mayor, etc., of N. Y.* v. *H. B., M. & F. Ry. Co.,* 186 N. Y. 304 ; *Schild* v. *C. P., N. & E. R. R. Co.,* 133 N. Y. 446 ; *Taylor* v. *City of Yonkers,* 105 N. Y. 202 ; *Pollock* v. *Pollock,* 71 N. Y. 137 ; *Baulec* v. *N. Y. & H. R. R. Co.,* 59 N. Y. 357.) The alleged defective condition of the rail was not the proximate cause of the plaintiff's injuries. (*Laidlaw* v. *Sage,* 158 N. Y. 73 ; *Taylor* v. *City of Yonkers,* 105 N. Y. 202 ; *M., etc., R. Co.* v *Kellogg,* 94 U. S. 469 ; *Ruppert* v. *B. H. R. R. Co.,* 154 N. Y. 90.)

*Warren S. Burt, Albert I. Sire* and *John J. Buckley* for respondent.

Chase, J.    The Appellate Division in the opinion rendered in deciding the first appeal (104 App. Div. 378) say: "The negligence complained of and which caused the injury to the plaintiff was in allowing the crosswalk, adjacent to a track upon which cars of both these defendants were run, to become so out of repair that the street was rendered unsafe for a person to use it with due care.    There is no evidence that the track itself was not in good condition and reasonably safe. *  *  *  If the injury had been caused by a defect in the track itself, or any appliance for the use of the road that had been constructed by either of the defendants in a public street, or because such structure or appliance had become out of repair and dangerous, there would then be a cause of action against the corporation which had laid the track or built the structure.    But there was nothing of that kind.    The track itself was in a proper condition, the injury having been caused by a hole in a crosswalk alongside of the track which, so far as appears from this evidence, neither of the defendants was under any duty to keep in repair."

On the second trial no evidence was offered by the defendants, but at the close of the plaintiff's evidence motions to dismiss the complaint, and to direct a verdict for the defendants on all the grounds now considered, were made and denied, to which the defendants excepted.

The court then charged the jury that "If the jury believe that the accident to plaintiff happened solely by reason of the hole or defect in the crosswalk, then the negligence was not that of the defendants or either of them, and the plaintiff cannot recover."    Also that "The obligation to maintain the crosswalk in proper condition did not rest upon the defendants or either of them."    Both defendants requested the court to charge that "The testimony as to the wearing of the rail was not sufficient to impute negligence to the defendants or either of them in the maintenance of the track."    Also that "The wearing of the rail was not the proximate cause of the injury to the plaintiff."    The court refused so to charge, to which the defendants excepted.

The question as to the responsibility of the defendants and each of them for the hole in the crosswalk next the rail was removed from the consideration of the jury by the trial court, and is not presented on this appeal and we express no opinion thereon.

At the time of the accident it was dark and very cold. The intestate did not know his foot was on the rail before he slipped off, and he did not see the hole until after he had slipped into it. No one saw the intestate at the time of the accident, and the only testimony describing what happened, except at a time after the intestate's leg was broken and he was lying with his foot fast in the hole, was given by him, and is as follows : " When I put my foot on the track it was slippery, and my foot kind of slipped off the track into the hole, and I kind of sat down — fell back and sat down. Then I tried to get up ; I didn't know my foot was caught, and I tried to get up and I felt my leg snap. When I walked over the track that night I did not intend to step on the rail. I knew there was lots of rails there. It was the slipping of my foot on the top of the rail which caused my heel to go into the hole."

The rail was an ordinary T rail as used by steam railroads. The rail was laid on and nailed to cross ties, and except at the hole the top of the pavement adjoining the outside of the rail was flush with it, and on the inside three to six inches below it. A T rail is wider at the top and bottom than in the center. The extended bottom part is called a flange. A new rail is five or six inches high, but it does not clearly appear how wide or just what shape it is on the top.

The plaintiff produced testimony to show that the hole had existed for several months and that wheels of trucks passing along Tenth avenue frequently went into said hole and ground against the outer edge of the rail. The intestate testified : " The track was worn like. By worn like I mean it was worn by wagons running up against it. I could not tell you how much that track was worn — that rail. I certainly did observe it ; it was worn smooth. There was no

groove there; it was worn around. That is as near as I can tell you. The shape of the track is not round."

One witness testified: "The rail I observed was all chipped where trucks run against it because the rail was bare there and there was not any stones or anything else to protect it." "It was chipped *not along the top but on the side.* The edge was worn off a quarter of an inch or so." "When I say this rail was chipped I mean that this track was bare for about two feet. * * * It kind of knocked the edge off of the rail. It was a smooth top. I suppose the track is about an inch and a quarter across on the top and it is supposed to be flat. The edge of this track was grooved away say a quarter of an inch from the trucks hitting up against it. I would say a quarter of an inch more or less."

Another witness testified: "It was worn off on the side." Another witness testified: "The rail itself was all rounded you know, on the westerly side of it — oval like." "The brow of it was worn down — torn down. By torn down I mean the outside of it two or three inches of the outside of the flange was torn down." "I said there was an oval top on that rail I mean rounded off, worn off. *I mean worn off the side of the rail.* · Worn off for may be half an inch; may be a little less. Not much. It was not more than that I think."

Another witness testified: "It was gouged out this way (witness indicating). * * * I did not notice anything about the flange of the rail. When I say that the rail was gouged out *that was on the side of the top of the rail.* That gouging I should judge was about half an inch deep, perhaps a little more; I should say the entire width of the top of the rail was about an inch or an inch and a half."

The testimony quoted is all the material evidence relating to the alleged negligent maintenance of the rail. The respondent in his brief says: "It was the flange of the rail owing to its jutting into the hole that did the injury."

It does not appear that the rail in shape or size as originally laid was not the same as those in quite universal use in streets by steam railroads, and if, as the respondent contends, the

jutting into the hole of the flange was the cause of the injury, then the maintenance of the hole with a portion of the flange worn away did not add to the danger therefrom.

The claim of negligence more earnestly insisted upon relates to the continuance of the rail after a portion of its projecting top had been worn away. Whether the form of the upper surface of the rail when new was affected or changed by the wearing away of the edge of the rail other than by making the top of the rail narrower is not shown clearly enough for determination.

The only thing relating to the maintenance of the rail that appears from the record is that the side of the top part of the rail was worn away or gouged out to the extent of from one-quarter to one-half an inch. The wheels of the cars that passed over the tracks came into contact with the top of the rail, and any smoothness resulting therefrom was an incident to its use. Any smooth iron surface will on a cold night be more or less slippery. A difference of one-quarter or one-half an inch in the width of the top of the rail could not materially affect the question as to whether it was reasonably safe for pedestrians crossing the street. A person walking across the street without seeing the rail would have been subject to the possibility of stepping so as to strike his heel near the outer edge of the rail and slipping therefrom, even if it had been several times the width of the rail as maintained.

We are of the opinion that the testimony as to the wearing of the rail was not sufficient to impute negligence to the appellant in the maintenance of the track, and that the wearing of the rail was not the proximate cause of the injury to plaintiff's intestate.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur; GRAY, J., not voting.

Judgment reversed, etc.